# In the United States Court of Federal Claims

No. 18-1119C
(Filed Under Seal:  November 28, 2018)
(Reissued for Publication:  December 18, 2018)*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TELESIS CORPORATION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

Postaward Bid Protest; RCFC 52.1; Cross-Motions for Judgment on the Administrative Record; Clarifications

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Russell D. Duncan, Washington, DC, for plaintiff.

Sheryl L. Floyd, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this postaward bid protest, plaintiff Telesis Corporation ("Telesis") alleges that its proposal in connection with a solicitation issued by the United States General Services Administration ("GSA") for information technology services was improperly evaluated.  Telesis argues that the GSA erred by deducting points Telesis claimed for possessing relevant experience without first seeking clarification regarding the missing information necessary to sustain the points.  The court is presented with the parties' cross-motions for judgment on the administrative record.  For the reasons explained below, the court denies Telesis's motion and grants defendant's motion.

## I.  BACKGROUND

### A.  Solicitation

On June 20, 2016, the GSA issued solicitation QTA0016GBA000 to procure information technology services for the government.  Administrative R. ("AR") 4, 270.  Specifically, the GSA sought proposals for the Alliant 2 Small Business Governmentwide Acquisition Contract, a

---

\*  The court initially issued this Opinion and Order under seal with instructions for the parties to propose any redactions.  The parties did not propose any redactions.

multiple-award, indefinite-delivery, indefinite-quantity contract. Id. at 270. An awardee under the solicitation would become eligible to receive task orders performed under the contract. Id. at 262-63. The GSA specified that proposals were due by October 7, 2016. Id. at 258.

## 1. Proposal Format and Contents

The GSA required offerors to submit their proposals in seven volumes—general; responsibility; cost-price; past performance; relevant experience; organizational risk assessment; and systems, certifications and clearances. Id. at 365. Within the general volume, offerors were required to include, among other items, a completed copy of the Document Verification and Self Scoring Worksheet ("Scoring Worksheet"). Id. The GSA also instructed offerors to submit a paper copy of the completed Scoring Worksheet. Id. In the Scoring Worksheet, offerors were required to claim points for meeting specific criteria in the solicitation. See id. at 372-73. For every claimed point, offerors were required to include supporting documentation in the proposal showing that they met the relevant criteria. Id.

Of particular import here, offerors could claim points for having relevant experience. Id. at 225-26. The GSA identified two categories of relevant experience: (1) Product or Service Code[1] ("PSC") projects and (2) leading edge technology ("LET") projects. Id. at 379; see also id. (explaining that a "project" consists of a contract or task order performed for a public or private entity). The GSA further defined relevant experience by delineating what types of work qualified under each category. Id. at 380, 387. Specifically, the GSA chose thirty-five PSCs— which were separated into three groups—that would be accepted and ten technology fields in which experience would qualify as LET.[2] Id. at 385-87, 390. Offerors were permitted to submit no more than (1) four projects for the first PSC group, two projects for the second group, and one project for the third group; and (2) three projects in each LET field. Id. at 380, 387. Subject to those restrictions, offerors could claim points for each qualifying project. Id. at 225-26. With regard to PSC projects, offerors could claim 3000 points for each project in the first group, 2000 points for each project in the second group, and 1000 points for a project in the third group. Id. at 225. Offerors could also claim 500 additional points for each substantiated PSC project that was performed for a different federal government customer. Id. As to the LET projects, offerors could claim 100 points for the first project in each LET field, 200 points for the second such project, and 300 for the third such project. Id. at 226.

As germane to Telesis's protest, the process was identical for substantiating the points for relevant experience in either the PSC or LET categories. Specifically, offerors were required to submit, along with other items, a completed relevant experience project template ("Experience

---

[1] PSCs are codes that are established by the government and "represent major products or services offered by a business." AR 387.

[2] For example, a contract to provide "IT and Telecom – Systems Development" (PSC D302) qualified as relevant experience in the PSC category, while a task order concerning "cloud computing" met the criteria for the LET category. AR 385, 390.

Form") signed by the cognizant contracting officer ("CO") for each project.[3]  Id. at 382, 388.  If offerors could not reach the CO, the GSA permitted the CO's representative ("COR") directly associated with the project to sign the Experience Form.  Id.  Offerors who relied on the COR's signature were also required to provide (1) the CO's and COR's contact information and (2) an electronic-mail ("e-mail") message from the COR to the CO containing the completed Experience Form.  Id. at 382, 388-89.  The GSA requested the e-mail message to "provide verification that the CO was made aware of the COR's concurrence with the [Experience Form]."  Id. at 382 (PSC projects); accord id. at 389 (LET projects).

## 2.  Evaluation Process

The GSA explained in the solicitation that the awardees would be selected based on which offerors presented the highest technically rated proposals with a fair and reasonable price.  Id. at 402.  For evaluating proposals, the GSA set forth a step-by-step review process for each proposal.  This process consisted of the following steps, which the CO was required to perform in the order noted below:

- Step One:  The CO preliminarily identifies the top eighty proposals by sorting all of the submissions from the highest score to the lowest score based on the offerors' Scoring Worksheets.  Id. at 402-03.  The CO then reviews the top eighty proposals in accordance with the following steps.

- Step Two:  For each proposal, the CO verifies that a support document exists for each of the evaluation elements included on the Scoring Worksheet.  Id. at 403.  Any discrepancies at this stage are treated as clarifications.  Id.

- Step Three:  The CO conducts an acceptability review to determine whether each offeror submitted all of the requested information for the general volume in the specified manner.  Id.  If a proposal does not pass the review, the proposal is replaced by the next highest scoring proposal that passes the acceptability review.  Id.

- Step Four:  The CO determines whether a support document substantiates each claimed point on the Scoring Worksheet.  Id.  If the claimed points are not validated, then (1) those points are deducted, (2) the proposals are resorted based on the revised score, and (3) the proposal is replaced if its new score is below the cutoff for the top eighty proposals.  Id.

---

[3]  For PSC projects, an offeror could also substantiate its points by submitting a Federal Procurement Data System – Next Generation report if the information in that document matched the information in the Experience Form.  AR 381.  Telesis, however, does not argue that it pursued this method of verification for any of the projects at issue in this protest.

- Step Five:  The CO evaluates whether the offeror proposed fair and reasonable pricing.  Id.  An offeror who fails to provide such pricing is eliminated from the competition.  Id.

The GSA explained that the process would continue until the top eighty proposals (or more, in the case of a tie for the last spot) were identified, at which point evaluations cease and contracts would be awarded to the offerors of those proposals.  Id.  Offerors were also informed that the GSA did not intend to hold discussions but would conduct clarifications as necessary.  Id. at 402.  As explained in the Source Selection Decision Memorandum, the GSA adhered to above process for evaluating proposals and did not hold discussions.  Id. at 466-68.

## B.  Telesis's Proposal

In its proposal, Telesis stated that it was entitled to 71,700 points.  Id. at 499.  Of particular import here, Telesis claimed points for (1) PSC Projects 1-4 and 2-2; and (2) LET Projects 1-1, 1-2, 5-1, 10-1, and 10-3.[4]  Id. at 496-98.  For each of those projects, Telesis attempted to substantiate its points by submitting (1) an e-mail message from Telesis to the cognizant CO and COR requesting a signature on the attached Experience Form and (2) the form signed by the COR.  E.g., id. at 608-09.  But Telesis did not include an e-mail message from the applicable COR to the CO for any of the projects.  E.g., id. at 606-82 (PSC Project 1-4).  Telesis also claimed points for other PSC and LET projects, id. at 496-98, and substantiated those points without relying on the COR's signature, e.g. id. at 815 (PSC Project 3-1).

The GSA reviewed Telesis's proposal in accordance with the procedures noted above.  See id. at 1462-65.  The GSA reached the fourth step of the evaluation process:  verifying that the support documents substantiated every claimed point on the Scoring Worksheet.  See id. (validating claimed points); see also id. at 402-03 (describing the evaluation process).  At this stage, the GSA deducted 7000 points from Telesis's proposal.  Id. at 1462-65.  Specifically, the GSA subtracted the 6000 points that Telesis claimed for PSC Projects 1-4 and 2-2 and LET Projects 1-1, 1-2, 5-1, 10-1, and 10-3.[5]  Id.  The GSA explained that Telesis's failed to substantiate those 6000 points because it relied on the COR's signature but did not provide the required e-mail message from the COR to the CO.  Id. at 1462, 1464.  Because PSC Projects 1-4

---

[4]  In all project numbers, the first digit represents the PSC group or LET field, and the second digit represents the ordinal number of projects the offeror submitted in that group or field.  See AR 179.  For example, Telesis's reference to PSC Project 1-4 refers to the fourth project with a PSC code in the first group.  Id. at 497.

[5]  The GSA deducted 3000 points for PSC Project 1-4 and 2,000 points for PSC Project 2-2.  AR 1462.  The precise allocation of the deducted points for the LET projects is more complicated because an unsubstantiated LET project could affect the scores for substantiated projects in the same field.  See id. at 226 (providing more points for each validated project in a LET field).  Simply stated, Telesis's failure to substantiate (1) LET Projects 1-1 and 1-2 resulted in a 300-point deduction; (2) LET Project 5-1 led to a 200-point deduction; and (3) LET Projects 10-1 and 10-3 caused a 500-point deduction.  Id. at 1466-67.

and 2-2 were not substantiated, the GSA also deducted 1000 points that Telesis claimed for performing those projects for different federal government customers.  Id. at 1463.

On February 14, 2018, the GSA posted an award notice reflecting that it had selected eighty-one awardees.[6]  Id. at 480-88.  Telesis was not listed as an awardee.  Id.  Telesis promptly requested a debriefing.  Id. at 1607.  In a March 9, 2018 debriefing letter, the GSA explained why it deducted points and how that deduction placed Telesis below the award cutoff.  Id. at 1609-12.  After it received the debriefing letter, Telesis filed a protest with the GSA.  Id. at 2114. The GSA denied the protest on April 16, 2018.  Id. at 3067.

### C.  Procedural History

On July 31, 2018, Telesis filed its protest with the court.  In its complaint, Telesis alleges that the GSA abused its discretion by not seeking clarification on whether each CO was notified by the respective COR regarding the latter's concurrence with Telesis's representations on its Experience Forms.  Based on that purported error, Telesis requests that the court declare that the GSA erred by deducting 6800 points from the points it claimed on its Scoring Worksheet and enjoin the GSA from proceeding with the current awardee list until it recalculates Telesis's score.[7]  Pursuant to the schedule they proposed, the parties briefed cross-motions for judgment on the administrative record, and the court heard argument on Tuesday, November 27, 2018. The motions are now ripe for adjudication.

## II.  LEGAL STANDARDS

In ruling on motions for judgment on the administrative record pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims, "the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).  Because the court makes "factual findings . . . from the record evidence," judgment on the administrative record "is properly understood as intending to provide for an expedited trial on the administrative record."  Bannum, 404 F.3d at 1356.

The court reviews challenged agency actions pursuant to the standards set forth in the Administrative Procedure Act.  28 U.S.C. § 1491(b)(4) (2012).  Specifically, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A):  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Under this standard, the court

---

[6]  The GSA exceeded its stated target of eighty awardees as a result of a four-way tie for the seventy-eighth position.  AR 1615.

[7]  Telesis disputes all of the deductions except for the 200 points removed because of its failure to substantiate LET Project 5-1.

may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." A court reviews a challenge brought on the first ground "to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citations omitted) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)); accord Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) ("The arbitrary and capricious standard . . . requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.").

Procurement officials "are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." Impresa, 238 F.3d at 1332 (quoting Latecoere Int'l, Inc. v. U.S. Dep't of the Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)). Thus, the court's review of a procuring agency's decision is "highly deferential." Advanced Data Concepts, 216 F.3d at 1058; see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) ("The court is not empowered to substitute its judgment for that of the agency."). Furthermore, a "protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater [in negotiated procurements] than in other types of bid protests." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004). And, when a contract is to be awarded on a "best value" basis, procurement officials have "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Id. (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.")).

## III. ANALYSIS

Telesis argues that its failure to include the requisite e-mail messages in its proposal was an apparent clerical error such that the GSA abused its discretion by not seeking clarification regarding the missing messages. Telesis asserts that this failure was a clerical error because the omission of the messages did not change the proposal's substance—the substantive information sought by the GSA was contained on the signed Experience Forms, which were included in the proposal. Telesis further contends that the error was apparent because its intent to obtain the necessary documentation from the government was clear from the submission of the e-mail messages it sent to the CO and COR. Defendant counters that Telesis did not make an apparent clerical error because it failed to submit the correct materials for multiple projects. Defendant also argues that the missing e-mail messages were an essential part of the GSA's verification process such that their omission was a material deficiency not subject to clarification.

The Federal Acquisition Regulation ("FAR") provides the framework for evaluating Telesis's argument that its protest should be sustained because the GSA did not seek clarification

regarding the missing e-mail messages.  "Clarifications are limited exchanges, between the Government and offerors, that may occur when award without discussions is contemplated." FAR 15.306(a)(1).  Indeed, "offerors <u>may</u> be given the opportunity to clarify certain aspects of proposals (e.g., the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors."  FAR 15.306(a)(2) (emphasis added).  Flowing from the permissive wording of the regulation, the GSA's decision to seek (or not to seek) clarification is within its discretion.  <u>Id.</u>; <u>see</u> <u>BCPeabody Constr. Servs., Inc. v. United States</u>, 112 Fed. Cl. 502, 509 (2013) ("[T]he regulatory provisions regarding mistakes discovered before award in bids for negotiated procurements are largely discretionary.").  <u>But see</u> <u>Camden Shipping Corp. v. United States</u>, 89 Fed. Cl. 433, 438 (2009) ("[T]he agency is required to seek clarification only in the case of a clerical error.").

The permissive nature of clarifications does not insulate from judicial review the GSA's decision to not seek clarification.  <u>See</u> <u>BCPeabody</u>, 112 Fed. Cl. at 512 ("[The court] cannot accept the implication that there are never situations in which [the procuring agency's] discretion would be abused by a failure to seek clarification.").  A critical component of evaluating the GSA's decision to not seek clarification is whether it should have discerned that the protestor made an error rather than a deliberate decision.  <u>See</u> <u>Dell Fed. Sys. v. United States</u>, 133 Fed. Cl. 92, 106 (2017) (deeming relevant the fact that the procuring agency "had notice that a clerical error had likely occurred"); <u>Level 3 Commc'ns, LLC v. United States</u>, 129 Fed. Cl. 487, 505 (2016) (giving weight to the fact that the offeror made representations in the proposal concerning the substance of the missing information); <u>BCPeabody</u>, 112 Fed. Cl. at 512 (considering that the offeror submitted a duplicate page and that the evaluator knew the substance of the missing information); <u>Griffy's Landscape Maint. LLC v. United States</u>, 46 Fed. Cl. 257, 259-60 (2000) (requiring clarification when the absence of information "clearly indicate[d] a clerical mistake").  Indeed, Telesis has not provided (and the court is not aware of) any precedent in which the United States Court of Appeals for the Federal Circuit or this court held that the procuring agency abused its discretion by not seeking clarification when the error was not apparent.  Therefore, the obviousness of the error is an important consideration for determining whether the GSA acted reasonably by not seeking clarification.

In light of the above, Telesis fails to demonstrate that the GSA abused its discretion by not seeking clarification.  Telesis does not direct the court to any record evidence before the GSA during the evaluation stage suggesting that Telesis's submission of the e-mail messages it sent to the COs and CORs rather than the messages sent by the CORs to the COs was an apparent error rather than a deliberate choice.  Indeed, Telesis relied on the COR's signature seven times to substantiate the claimed relevant experience, and each time Telesis repeated the

same error: submitting the wrong e-mail message.[8],[9]  The repetition suggests a calculated decision.  See Westfield Ins. Co. v. Harris, 134 F.3d 608, 615 (4th Cir. 1998) ("[W]here prior acts of apparent coincidence are similar, the repeated reoccurrence of such an act takes on increasing relevance to support the proposition that there is an absence of accident.").  This conclusion is bolstered by the evidence in the administrative record suggesting that Telesis did not interpret the solicitation as requiring an e-mail message from the COR to the CO.  In the e-mail messages Telesis sent to its customers and submitted with its proposal, Telesis never asked that a COR signing the Experience Form also (1) send an e-mail message notifying the cognizant CO that the COR concurred with Telesis's representations on the form or (2) forward that message to Telesis for inclusion in its proposal.  Moreover, Telesis's argument that it made an apparent clerical error requiring clarification is further undermined by the nature of the error:  the submission of documents—e-mail messages from Telesis to the COs and CORs requesting a signature on an Experience Form—that are relevant to (but insufficient for) substantiating the claimed points.  The inclusion of these messages is not so peculiar that the GSA was obligated to seek clarification.  See Criterion Systems, Inc. v. United States, No. 18-875, 2018 WL 4474672, at *7 (Fed. Cl. Sept. 13, 2018) (explaining that the GSA was not required to seek clarification when the offeror provided a private audit of its accounting system rather than the required government audit).  Compare id., with BCPeabody, 112 Fed. Cl. at 511 (requiring clarification when the offeror made a clerical error by submitting a duplicate page).  Simply stated, Telesis fails to demonstrate that it committed an apparent clerical error or otherwise show that the GSA abused its discretion by not seeking clarification.

## IV.  CONCLUSION

For the reasons discussed above, the court **DENIES** Telesis's motion for judgment on the administrative record and **GRANTS** defendant's cross-motion for judgment on the administrative record.  Telesis's protest is **DISMISSED.**  No costs.  The clerk shall enter judgment accordingly.

The court has filed this ruling under seal.  The parties shall confer to determine

---

[8]  Although the GSA identified seven projects that were not validated because they lacked the required e-mail message, Telesis seemingly made the same error on an eighth project—LET Project 6-3—because it relied on the COR's signature without providing an e-mail message from the COR to CO.  See AR 1154-78.

[9]  The court is perplexed by Telesis's statement that it "submitted the correct form of the CO 'awareness email'" for fifteen projects.  Pl.'s Opp'n to Def.'s Mot. J. on the Administrative R. 2 (citing AR 1462-63).  The record contains no such e-mail messages.  Indeed, the inclusion of such messages would be peculiar because Telesis relied on the CO's signature for all of its validated projects (with the exception of LET Project 6-3, as discussed in note 8, supra) so no e-mail messages from the CORs to the COs were required to substantiate the points.  Moreover, Telesis's statement is not helpful because the referenced pages in the administrative record are unrelated to validating experience.  See AR 1462-63 (documenting part of an audit and agreement to extend the acceptance period).

proposed redactions to which all the parties agree.  Then, by **no later than Wednesday, December 12, 2018,** the parties shall file a joint status report indicating their agreement with the proposed redactions, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge